[Civ. No. 5921. Third Appellate District.—November 23, 1937.]

In the Matter of the Estate of WILLIAM FOREST FULTON, Deceased. S. G. FULTON, Appellant, v. LOUISA J. FULTON, Respondent.

W. Coburn Cook for Appellant.

R. V. Wilcox and Dennett & Zion for Respondent.

PLUMMER, J.—This matter is before us upon two appeals, one from a decision of the court determining heirship, and the other from an order and decree of settlement of final account

and distribution. Both appeals are presented upon one transcript and one set of briefs.

The appeal by S. G. Fulton presents for our consideration the disallowance by the trial court of a certain sum claimed as counsel fees for extra services; also the sum of $75.76 for printing a brief used upon an appeal hereafter referred to; also, that it was error to terminate the family allowance as of February 1, 1937, instead of on May 16, 1934; and also, that it was error to order one-half of the estate distributed to Louisa J. Fulton.

The will of William Forest Fulton reads as follows: "In the Name of God, Amen. I, William Forest Fulton, being of sound mind and memory, but knowing the uncertainty of human life, do make, and publish this, my last will and testament, that is to say, I give, devise and bequeath to S. G. Fulton, my father, to be divided among my heirs equally, that he be appointed administrator without bond. In Witness Whereof, I have hereunto set my hand and seal this 18th day of November, 1912." (Signed by William Forest Fulton and attested by two witnesses.)

It will be observed that the testator failed to make any mention of his estate. The court, however, apparently construed the will as reading: I give, devise and bequeath to S. G. Fulton, my father, all my estate, etc., or words to that effect.

William Forest Fulton died on the 21st day of December, 1933. The will just mentioned was admitted to probate, and the appellant, S. G. Fulton was appointed executor thereof. Prior to the death of William Forest Fulton on December 21, 1933, the respondent Louisa J. Fulton, was his wife, and upon the death of said William Forest Fulton, under the will became his surviving widow. The appellant, however, claims that certain court proceedings had prior to, and subsequent to the death of William Forest Fulton deprived the respondent of her rights as a surviving widow of the deceased. The proceedings just referred to are as follows:

On June 7, 1932, William Forest Fulton was granted an interlocutory decree of divorce, on the ground of desertion, from Louisa J. Fulton, by the Superior Court of Stanislaus County. The interlocutory decree disposed of certain property belonging to the respective parties. Louisa J. Fulton ap-

pealed from the decree just referred to. On May 9, 1934, the Supreme Court rendered its decision affirming the interlocutory decree. On December 7, 1934 (almost one year after the death of William Forest Fulton), final decree was entered in said action.

After the death of William Forest Fulton the respondent, Louisa J. Fulton, was granted a family allowance in the sum of $50 per month. Upon appeal to this court, the order of the superior court making the allowance referred to was affirmed. Louisa J. Fulton thereafter filed a petition asking to have set aside to her a probate homestead and certain exempt property. This petition was denied by the probate court and the order of the court was affirmed upon appeal to this court.

The proceedings just referred to were all contested by the appellant, S. G. Fulton, and for the services therein an allowance of $325 as extraordinary services for the attorney for the executor was prayed for, and also the sum of $75.76 for printing of brief in the Matter of the Application for Homestead and the setting aside of exempt property.

The record shows that the court did allow extra compensation on account of services of the attorney, in the sum of $185. The legal fee, calculated upon the appraised value of the estate, amounted to $532, which, with the extra allowance, aggregated the fee for the attorney in the sum of $717, apparently considered by the court as a sufficient allowance for the services of the attorney.

So far as the record shows, it appears that S. G. Fulton was not simply acting as executor of the last will of said deceased, in the preservation of the funds of the estate for the benefit of creditors, but was acting in behalf of his own interests in preventing the respondent, Louisa J. Fulton, from either receiving a family allowance or a homestead, or having set aside to her the exempt property of the estate.

The court, in its order refusing the extra allowance both to the attorney and to the executor, used the following language: "That said W. Coburn Cook performed further services of the reasonable value of $325.00, as alleged in the petition herein, but said fees are not allowed for the reason that S. G. Fulton was not obliged, as such executor, to resist the petitions of Louisa J. Fulton for family allowance and probate homestead and exempt personal property. That for the same reason the sum of $75.76 paid for printing brief

on appeal in said homestead matter is not allowed the executor as a charge against the estate.''

Section 902 of the Probate Code specifies ''that further allowances may be made for extraordinary services as the court may deem just and reasonable for extraordinary services, such as sales or mortgages of real or personal property, contested or litigated claims against the estate'', etc. The court did allow extra compensation for certain extraordinary services, such as negotiating mortgages, etc., but disallowed, as stated, extra compensation for the litigation referred to.

■ Section 902, *supra,* leaves the matter within the sound discretion of the trial court, and does not make it mandatory upon the court to grant extra allowance of fees on account of services. In making such allowance or disallowing a claim therefor, the trial court necessarily takes into consideration the value of the estate, the work performed by the attorney in the routine administration thereof, and the amount to which the attorney would legally be entitled, calculated according to the provisions of the Probate Code, and if the sum allowed by law appears to be a reasonable compensation, even though the attorney may have performed some extraordinary services, it is within the sound discretion of the trial court to disallow claims for extra compensation, and unless it appears that there has been an abuse of discretion, an appellate court is not at liberty to disturb the conclusion of the trial court. As we have said, the court did allow $185 additional fee, which brought the full compensation of the attorney up to the sum of $717, which appears to be a reasonably fair compensation for the services shown by the record to have been performed by the attorney for the executor in the administration of the estate.

Again, the court had a right to take into consideration the motives which actuated the appellant in resisting the claims of the widow, Louisa J. Fulton. In sections 1052 and 1053 of 11B, California Jurisprudence, the rule, supported by a number of authorities, is stated as follows: ''If the representative participated individually, or as a partisan, the attorneys' services are not for the benefit of the estate or in aid of administration.'' The authorities supporting the rule just stated are there cited and need not be listed here.

■ The exception to the date when the family allowance was terminated does not appear to us to be well taken. The order settling the second annual account of the executor, dated June 22, 1936, specifically provided for the continuance of the payment of the family allowance to the widow at the rate of $50 per month. No appeal was taken from this order. It has become final and binding upon the court and was properly taken into consideration by the court in settling the final account and ordering distribution. So long as the order remained in force, which was up to February 1, 1937, the order settling the final account was conclusive. (Citing *Nelson's Estate,* 167 Cal. 321 [139 Pac. 692].) Other cases might be cited, but the rule stated in the Nelson case has not been modified.

■ It is further urged that the court erred in finding that Louisa J. Fulton, the respondent, was entitled to share equally with S. G. Fulton in the distribution of the estate of William Forest Fulton, deceased.

In the *Estate of Fulton,* 15 Cal. App. (2d) 202 [59 Pac. (2d) 508], the following language was used by the court in its opinion, to wit: "It is well settled law that an interlocutory decree of divorce does not dissolve the marital status, and therefore upon the death of William Forest Fulton, Louisa J. Fulton became his widow." The court in that case, while recognizing that Louisa J. Fulton became the widow of William Forest Fulton upon the latter's decease, held that Louisa J. Fulton was not entitled to have set aside to her a homestead, for the reason that for some time prior to the decease of William Forest Fulton, and at the time of his decease, she was not living with him as his wife, and was therefore not a part of his family. The court did not hold that the interlocutory decree terminated the rights of the respondent as the surviving widow of William Forest Fulton, deceased.

In the matter of the *Estate of Gould,* 181 Cal. 11 [183 Pac. 146], the Supreme Court held as follows: "At the time of the death of the decedent, Nettie Gould was his wife. She is now entitled to such rights as the law confers upon her under the circumstances, as his widow, including the right to a family allowance, unless the property of the community awarded to the decedent was allowed to him free and clear of all claim by her, including the claim to a family

allowance.'' The court in that case held that the language of the agreement between the parties and the interlocutory decree did not abridge the rights of Nettie Gould as the surviving widow of the deceased.

In the *Estate of Fulton,* 8 Cal. App. (2d) 423 [48 Pac. (2d) 120], this court had occasion to construe the language used in the interlocutory decree as affecting the rights of the respective parties thereto. It was there said: ''The second ground for reversal urged by the appellant is based upon the language of the decree which we have quoted, awarding certain property to William Forest Fulton. The decree itself does not purport to dispose of all of the property which might have been the community property of William Forest Fulton and Louisa J. Fulton, but if it be assumed that no other property was owned by William Forest Fulton, the decree does not in terms deprive Louisa J. Fulton of her marital rights as against the estate of William Forest Fulton, deceased. The language in the instant case is no different in substance and effect from that found in the interlocutory decree mentioned in the *Estate of Gould,* 181 Cal. 11 [183 Pac. 146], to-wit: 'All other property of said community, real, personal or mixed, and of every description is hereby assigned and allotted to the plaintiff, Frank H. Gould, free and clear of all claim of the defendant.' The words 'free and clear of all claim of the defendant', just quoted, are no less comprehensive than the words 'free from any claim of any nature whatsoever of Louisa Fulton'.''

Following the authorities cited in the opinion in the case just referred to, it was held, as we have stated, that the rights of the respondent as the widow of William Forest Fulton, deceased, were not abridged, and that she stood in the position of a widow of said deceased at the time of his death, which, of course, included the right of inheritance.

A petition to have the foregoing cause heard by the Supreme Court was denied on September 19, 1935.

In support of what we have said, we may cite the recent case of *Estate of Minier,* 215 Cal. 31 [8 Pac. (2d) 123, 81 A. L. R. 689]. The law of this case having been settled by the decisions to which we have referred, establishing the status of Louisa J. Fulton as the wife of the deceased just prior to his death, and as his surviving widow thereafter, it necessarily follows that the decree of the court awarding

her one-half of the estate of William Forest Fulton was and is correct.

The further point is made by the appellant that the widow was barred by reason of having accepted the property awarded to her under the interlocutory decree. This contention, however, does not seem to us meritorious, as it is shown that the widow did not take possession of such property until some months after the death of William Forest Fulton.

Finding no reversible errors, the decree establishing heirship, making distribution, and the order settling the final account of the executor are, and each of them is, hereby affirmed.

Pullen, P. J., and Thompson, J., concurred.