[No. S008320. Nov. 27, 1989.]

Estate of ESTHER ROYCE TRYNIN, Deceased.
RICHARD W. ECKARDT et al., Petitioners and Appellants, v.
MARCIA D'ESOPO et al., as Co-administrators, etc., Objectors and
Respondents.

## COUNSEL

Richard W. Eckhardt, in pro. per., Eckardt & Ruonala, Kenneth R. Ruonala, Pachter, Gold & Schaeffer, Pachter & Schaeffer, Arnold H. Gold, Judith A. Enright and Robert E. Young for Petitioners and Appellants.

Hufstedler, Miller, Kaus & Beardsley, Joseph L. Wyatt, Jr., Dennis M. Perluss, Lisa A. Christian, Darling, Hall & Rae, Matthew S. Rae, Jr., and Richard L. Stack as Amici Curiae on behalf on Petitioners and Appellants.

Marcia D'Esopo, in pro. per., for Objectors and Respondents.

## OPINION

KAUFMAN, J.—Probate Code section 910 provides that attorneys for executors and administrators of a decedent's estate shall be allowed fees from the estate for conducting the ordinary probate proceedings and "such further amount as the court may deem just and reasonable for extraordinary services." (See also, Prob. Code, § 469 [attorney fees for extraordinary services to special administrator]; all further statutory references are to the Probate Code unless otherwise indicated.) The issue presented in this case is whether the fees so allowed include compensation for time reasonably spent to establish and defend the attorney's own fee claim, or what is sometimes referred to as "fees on fees" or "fees for fees." We conclude that section 910 authorizes courts in probate proceedings to award such compensation and that a contrary rule would ultimately be deleterious to decedents' estates and heirs because attorneys would be reluctant to perform services necessary to the proper administration of decedents' estates if the compensation awarded for their services could be effectively diluted or dissipated by the expense of defending against unjustified objections to their fee claims.

I

Marcia D'Esopo and Sonia Meyerhof were appointed co-administrators of the estate of their elder sister, Esther Royce Trynin, who died intestate in February 1981. The co-administrators, sole heirs of the decedent, retained the law firm of Pachter, Gold & Schaffer (hereafter Pachter) as probate counsel. The estate's value in August 1981, as stated in an inventory submitted at that time, was $409,000.

Pachter defended the co-administrators in a separate civil action (hereafter the Hook litigation) brought against them by Trevor Hook, after rejection of his creditor's claim against the estate, seeking recovery of $738,000 or half of the estate. In July 1983, a jury returned a verdict awarding Hook $125,000 plus costs. The co-administrators appealed from the judgment entered on this verdict and, in September 1983, retained Richard W. Eckardt to represent them on the appeal. Pachter continued to serve as probate counsel.

In May 1985, the judgment in favor of Hook was reversed by the Court of Appeal on the ground of jury misconduct. In June 1985, the court in the probate case awarded fees to Eckardt for extraordinary services performed to date. In October 1985, Eckardt's motion to be relieved as attorney of record in the Hook litigation was granted on the basis of the co-administrators' noncooperation and nonpayment of fees.

In January 1986, the co-administrators reengaged Eckardt to represent them in the retrial of the Hook litigation. Eckardt succeeded in settling the Hook litigation on the eve of retrial for $125,000, with the parties bearing their own respective costs. In March 1986, both Eckardt and Pachter petitioned for costs and fees for extraordinary services in defending the Hook litigation. Their petitions were consolidated for hearing. In April 1986, Pachter substituted out as probate counsel. As a result of appreciation in estate assets and the accumulation of rental income, the value of the estate at this time was approximately $593,000.

The co-administrators responded to the fee claims of Eckardt and Pachter by hiring an attorney to contest the claims. The co-administrators made no settlement offer to either petitioner; rather, they took the position that no further amount was owing and, indeed, that petitioners had been overpaid. Hearing on the consolidated claims for costs and fees required seven half-day sessions over a ten-week period and resulted in an order awarding Pachter $49,981 for its services and Eckardt an additional $5,364 for services performed subsequent to the previous award.

In May 1987, both Eckardt and Pachter filed additional petitions for allowance of fees for extraordinary services. These petitions sought compensation for time spent by Eckardt and Pachter in establishing and defending their previous fee claims. The court declined to receive or consider any evidence concerning these claims and denied them on the ground it lacked authority "to award compensation for services which benefit only the attorneys for the estate and do not enhance the size of the estate available for distribution to the beneficiaries thereof . . . ." Both petitioners appealed from the orders denying their respective petitions.[1]

The Court of Appeal affirmed, agreeing with the trial court that section 910 does not authorize compensation for an attorney's time reasonably spent to establish and defend a fee claim.

## II

Before addressing the specific question of attorney fees for fee-related services under section 910, it will be helpful to review general principles of state law governing compensation for attorney services in probate matters.

---

[1] The factual statements in this opinion are based on the allegations of Eckardt and Pachter's fee petitions. For purposes of this appeal we assume these allegations are true (cf. *J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799, 803 [157 Cal.Rptr. 407, 598 P.2d 60] [complaint allegations assumed true]), but we recognize the co-administrators' right to dispute them in subsequent proceedings.

■ The rules governing compensation for attorney services for decedents' estates "do not arise from contract but are founded upon statutory enactment." (*Estate of Johnston* (1956) 47 Cal.2d 265, 272 [303 P.2d 1].) The pertinent statutory provisions govern both the amount recoverable and the procedure for recovery.

An attorney who has rendered services to an estate's representative may obtain compensation by petitioning the superior court sitting in probate for an order requiring the representative to make payment to the attorney out of the estate. (§ 911.) ■ Because an attorney who has performed probate work is a person interested in the estate, the fee petition need not be presented by the representative but may be presented directly by the attorney, who may also appeal from an adverse ruling. (*Estate of Merrill* (1946) 29 Cal.2d 520, 523 [175 P.2d 819]; *Chapman* v. *Pitcher* (1929) 207 Cal. 63, 68 [276 P. 1008]; *Estate of Lagersen* (1962) 210 Cal.App.2d 788, 791 [26 Cal.Rptr. 783].) The probate petition is frequently the only remedy for enforcing the attorney's right to recover fees for probate work; with few exceptions (see, e.g., § 13660), the estate's representative is not personally liable for the fees (*Estate of Kelleher* (1928) 205 Cal. 757, 763 [272 P. 1060]; *Estate of Lee* (1981) 124 Cal.App.3d 687, 693 [177 Cal.Rptr. 229]; *Hatch* v. *Bush* (1963) 215 Cal.App.2d 692, 703 [30 Cal.Rptr. 397, 13 A.L.R.3d 503]), and so the attorney is generally precluded from maintaining a separate action against the representative to recover compensation for work performed for the estate (*Chapman* v. *Pitcher, supra,* at p. 69; *Hatch* v. *Bush, supra,* at p. 705).

For conducting "the ordinary probate proceedings," an attorney is compensated in the same amount allowed as a commission to the estate representative (§ 910), which is determined as a percentage of the estate's value (§ 901). Fees for extraordinary services, on the other hand, are not determined by a fixed formula but instead require the exercise of judicial discretion to determine what amount is "just and reasonable" (§ 910). (*Estate of Fraysher* (1956) 47 Cal.2d 131 [136 301 P.2d 848]; *Estate of Turino* (1970) 8 Cal.App.3d 642, 648-649 [87 Cal.Rptr. 581].) ■ Because the attorney's right to compensation is founded upon statute, the court, in determining the amount due an attorney for extraordinary services to an estate, is not bound by the terms of compensation specified in a contract of employment between the attorney and the estate's representative, such compensation provisions being generally unenforceable. (*Chapman* v. *Pitcher, supra,* 207 Cal. 63, 69; *Hatch* v. *Bush, supra,* 215 Cal.App.2d 692, 705.)

■ As this court has stated, "Every [probate] attorney should be fully and fairly paid for his [or her] services, having in mind their nature, their difficulty, the value of the estate, and the responsibility thus cast upon the

counselor." (*Estate of Byrne* (1898) 122 Cal. 260, 266 [54 P. 957].) Other factors which may be considered by the court in determining compensation for extraordinary services include the nature of the estate assets and the amount awarded as ordinary compensation. (*Estate of Walker* (1963) 221 Cal.App.2d 792, 795 [34 Cal.Rptr. 832].) If, under all the relevant circumstances, the amount awarded as ordinary compensation is fair and reasonable for all the attorney services, the court may disallow a request for extraordinary compensation even though some extraordinary services have been performed. (*Ibid.*; see also, *Estate of Fulton* (1937) 23 Cal.App.2d 563, 567 [73 P.2d 664].)

Although benefit to the estate is one of the factors to be weighed by the court in fixing compensation (*Estate of Stokley* (1980) 108 Cal.App.3d 461, 473 [166 Cal.Rptr. 587]; *Estate of Briggs* (1964) 230 Cal.App.2d 592, 595 [41 Cal.Rptr. 237]), an attorney may be entitled to compensation even though the extraordinary services rendered "turn out to be entirely valueless" (*Estate of Merritt* (1950) 98 Cal.App.2d 70, 76 [219 P.2d 40]; see also, *Estate of Turino, supra,* 8 Cal.App.3d 642, 648-649). Services that do not directly benefit the estate in the sense of increasing, protecting, or preserving it are nonetheless compensable if the estate's attorneys or representatives in performing the services were "acting in consonance with the fiduciary duties imposed upon them" (*Ludwig* v. *Superior Court* (1933) 217 Cal. 499, 500 [19 P.2d 984]). For example, we rejected an argument that costs incurred in a successful defense of an accounting should have been borne by an executor personally "on the theory that such defense benefitted [*sic*] the executor and not the estate," noting it is well established that such expenses are chargeable against the estate. (*Estate of Beach* (1975) 15 Cal.3d 623, 644 [125 Cal.Rptr. 570, 542 P.2d 994]; see also, *Ludwig* v. *Superior Court, supra,* at p. 500; cf. *Estate of Cassity* (1980) 106 Cal.App.3d 569, 574 [165 Cal.Rptr. 88] [testamentary trustee entitled to compensation for defending trust accounting].)

■ With these principles of probate law in mind, we turn to the issue presented by this case, which is whether the attorney's right to full and fair compensation for probate work necessarily encompasses a right to compensation for fee-related services.

■ Where the right to counsel fees is based on statute, recovery for fee-related services has been consistently allowed. In *Bruckman* v. *Parliament Escrow Corp.* (1987) 190 Cal.App.3d 1051 [235 Cal.Rptr. 813], attorney fees recovered in the trial court pursuant to an escrow agreement's attorney-fee

clause, made reciprocal by virtue of Civil Code section 1717,[2] included fees for the fee litigation. The Court of Appeal upheld the award, stating: ". . . it has been held that when an amount of attorney's fees is statutorily authorized, the reasonable expenses of preparing the application for fees should be included in the award." (190 Cal.App.3d at p. 1062, citing *Brown v. Fairleigh Dickinson University* (D.N.J. 1983) 560 F.Supp. 391, 414.)

In *Serrano v. Unruh* (1982) 32 Cal.3d 621 [186 Cal.Rptr. 754, 652 P.2d 985], we held that an attorney fee award under a statute codifying the private-attorney-general theory (Code Civ. Proc., § 1021.5)[3] "should ordinarily include compensation for all hours reasonably spent, including those relating solely to the fee." (32 Cal.3d at p. 624.) We reasoned that the rationale of the private-attorney-general theory—i.e., that private litigation to enforce important public policies should be actively promoted by awarding compensation to the successful plaintiffs' attorneys—"will often be frustrated, sometimes nullified, if awards are diluted or dissipated by lengthy, uncompensated proceedings to fix or defend a rightful fee claim." (P. 632.) The burden of litigating a contested fee claim in a private-attorney-general case, we observed, is often substantial and "the hours demanded could dwarf those spent to establish the claim on the merits." (Pp. 634-635.)

We rejected an argument that fee-related litigation does not meet the three requirements of Code of Civil Procedure section 1021.5 (see fn. 3, *ante*), reasoning that the requirements need only be satisfied in the "action" as a whole, rather than in each separate proceeding making up the action. (*Serrano v. Unruh, supra,* 32 Cal.3d 621, 636-637.) We concluded that "absent circumstances rendering the award unjust, fees recoverable under section 1021.5 ordinarily include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim." (P. 639, fn. omitted.)

Similarly, fee-litigation fees have been held recoverable under the litigation expense provision of Code of Civil Procedure section 1268.610 (see

---

[2] "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (*Id.,* subd. (a), first par.)

[3] "Upon motion, a court may award attorney's fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor." (*Ibid.*)

also, Code Civ. Proc., § 1235.140, subd. (b)); in eminent domain proceedings (*City of Oakland* v. *Oakland Raiders* (1988) 203 Cal.App.3d 78, 85 [249 Cal.Rptr. 606]; *State of California* v. *Meyer* (1985) 174 Cal.App.3d 1061, 1074 [220 Cal.Rptr. 884]); under the attorney-fee provision of Government Code section 91003 in actions to enforce conflict-of-interest laws (*Downey Cares* v. *Downey Community Development Com.* (1987) 196 Cal.App.3d 983, 997-999 [242 Cal.Rptr. 272]); and under the attorney-fee provision of Government Code section 12965, subdivision (b), in employment discrimination actions (*Ackerman* v. *Western Elec. Co., Inc.* (N.D.Cal. 1986) 643 F.Supp. 836, 866). (See also Note, *Determining Fees For Fees Under the Equal Access to Justice Act: Accomplishing the Act's Goals* (1988) 9 Cardozo L.Rev. 1091.)

In all these statutory fee cases, however, the statute authorized recovery of the successful litigant's attorney fees from the opposing party. These statutes are, in other words, specific exceptions to the American rule that parties to litigation are responsible for paying their own attorneys. (See Code Civ. Proc., § 1021; *Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 504-505 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763].) An award of attorney fees under section 910, on the other hand, is not a fee-shifting mechanism at all; attorney fees under section 910 are paid from the estate for which the attorney services were performed, not from a litigation foe. Given this significant distinction between section 910 and the other attorney-fee statutes pursuant to which awards for fee-related fees have been upheld, the fact that attorney fees for extraordinary services are awarded pursuant to statute, in and of itself, does not provide a complete and satisfactory justification for allowing fee-related fees.

■ As we noted in *Serrano* v. *Unruh, supra,* 32 Cal.3d 621, 627-632, attorney fees awarded under the common-fund and common-benefit theories generally have been held not to include compensation for fee litigation. (See, e.g., *Lindy Bros. Builders, Inc.* v. *Am. Radiator, etc.* (3d Cir. 1976) 540 F.2d 102, 111; but see also, *Pawlak* v. *Greenawalt* (3d Cir. 1983) 713 F.2d 972, 980-984 [upholding fee-related fees in common-benefit action].) There are, however, significant distinctions between fee awards under the common-fund and common-benefit theories and fee awards under section 910. In the common-fund and common-benefit cases, recovery from the fund or from parties benefited by the litigation provides either compensation to the attorney over and above that paid by the client, or reimbursement to the client for fees previously paid to the attorney. Section 910, by contrast, provides the usual and customary method, and generally the *only* method, by which an attorney may obtain compensation for extraordinary services performed for a decedent's estate. Also, a strict quantum meruit analysis may be justified in the common-fund and common-benefit cases because the

parties seeking compensation have acted as volunteers in conferring a benefit on others. (See generally, Dawson, *Lawyers and Involuntary Clients: Attorney Fees From Funds* (1974) 87 Harv.L.Rev. 1597.) But an attorney performing extraordinary services for an estate does not act as a volunteer and it is settled that fees are recoverable even when the extraordinary services have resulted in no benefit to the estate (*Estate of Merritt, supra,* 98 Cal.App.2d 70, 76), provided only that the attorney has acted in accordance with his or her fiduciary duties (*Ludwig v. Superior Court, supra,* 217 Cal. 499, 500).

For purposes of the issue at hand, therefore, the present case cannot be conveniently categorized with either the statutory fee-shifting cases or the common-fund and common-benefit cases. ■ Rather, this case is representative of a third category in which an attorney fee is statutorily authorized and subject to court approval but not payable by a litigation opponent. Reported decisions concerning fee awards for fee-related services in cases meeting this description are few, but what authority there is generally supports the conclusion that compensation should be awarded for such services.[4]

Although no previous case has considered the right to attorney fees for fee-related services under section 910, it has been held, in a related area, that a testamentary trustee is entitled to compensation for defending a challenge to the reasonableness of its own fee application. (*Estate of Griffith* (1950) 97 Cal.App.2d 651, 656 [218 P.2d 149]; see also, *Cleveland Trust Co. v. Wilmington Trust Co.* (Del. 1969) 258 A.2d 58, 66, and cases cited therein.) In *Griffith, supra,* Justice McComb, writing for the Court of Appeal, concluded that expenses incurred by a trustee in litigating its fee entitlement had been justifiably incurred "in connection with the proper administration and execution of the trust estate." (97 Cal.App.2d at p. 656.) Fee-litigation expenses have also been allowed to a guardian of the person and estate of an incompetent person. (*Riley v. Superior Court* (1957) 49 Cal.2d 305, 310 [316 P.2d 956].) The logic which allows testamentary

---

[4] The Washington Supreme Court has reached a contrary conclusion, i.e., "that an attorney in probate is not entitled to additional fees for attorneys and experts in proving the reasonableness of his fee in the final report." (*Matter of Estate of Larson* (1985) 103 Wn.2d 517 [694 P.2d 1051, 1060] [impliedly disapproving *In re Estate of Coffin* (1972) 7 Wn.App. 256 (499 P.2d 223, 229)].) The statement may be regarded as dictum inasmuch as the court held that the inexperienced attorneys in that case had breached their fiduciary obligations by the manner in which they invested estate funds and had spent an inordinate amount of time on an estate presenting no difficult or complex legal or administrative problems. Since the fee request was shown to be *unreasonable,* the question whether fee-related fees could be awarded for defense of a reasonable fee claim was not actually presented. In any event, for the reasons stated in this opinion we do not find the Washington Supreme Court's analysis of this issue persuasive.

trustees and legal guardians to receive compensation for the expenses of fee litigation likewise supports the right of an attorney for an estate's representative to be compensated for fee-related services.

Also instructive is *In re Nucorp Energy, Inc.* (9th Cir. 1985) 764 F.2d 655, a case dealing with counsel fees in the context of bankruptcy proceedings. Employment of counsel was authorized by the bankruptcy court for a corporation and its numerous affiliates after they had commenced separate chapter. 11 reorganization proceedings and had continued to operate as debtors in possession. (Pp. 656-657.) Counsel submitted a final fee application to the bankruptcy court which included a request for compensation for time spent preparing and presenting the fee application. The bankruptcy judge denied this part of the application, remarking that "time devoted to fee application preparation should not be compensable because such efforts benefit only the law firm and not the estate." (P. 657.) Counsel appealed.

The reviewing court noted that the governing provision (11 U.S.C. § 330(a)(1)) "authorized the court to award [counsel] 'reasonable compensation for actual, necessary services' rendered to a bankruptcy estate," with the amount to be " 'based on the time, the nature, the extent, and the value of the services and the cost of comparable services' in non-bankruptcy cases." (*In re Nucorp Energy, Inc., supra,* 764 F.2d at p. 657.) Congress's intent in enacting this provision, the court stated, was "to overrule the judicially fashioned doctrine of 'economy of the estate' and to ensure adequate compensation for bankruptcy attorneys so that highly qualified specialists would not be forced to abandon the practice of bankruptcy law in favor of more remunerative kinds of legal work." (P. 658.) Entitlement to compensation for preparing and presenting the fee application turned, therefore, on whether this work constituted "actual, necessary services" and whether it was compensable in nonbankruptcy cases. (*Ibid.*)

On the first point, the court concluded that preparation and presentation of the fee application constituted "actual, necessary services" because preparation of a detailed fee application was statutorily required and because the detailed billing information thus provided was "of importance to all parties, as well as to the court." (*In re Nucorp Energy, Inc., supra,* 764 F.2d at p. 659.) On the second point, the court reasoned that in determining whether similar services were compensable in nonbankruptcy cases, the relevant group for comparison was "other types of cases in which fees are awarded by the court." (*Ibid.*) The court noted that, "[i]n statutory fee cases, federal courts . . . have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable." (Pp. 659-660.) The court noted that in most other statutory fee contexts, the source of recovery was "funds provided solely for the purpose of compensating the attorney"

whereas in bankruptcy cases the source of funds was the bankrupt estate, but it concluded that this distinction did not justify a different result: "While recognizing the unique nature of the source of fees in bankruptcy proceedings, we have little difficulty in concluding that, on balance, we should follow the practice employed in other statutory fee cases rather than that used in common fund cases." (P. 662.) In the final analysis, the controlling consideration was the legislative intent "to ensure that attorneys are fully compensated for handling cases." (*Ibid.*) A rule denying compensation for necessary fee-related services would be inconsistent with this intent since it would result in a "reduction of the rate paid for all the attorneys' services" and thereby diminish the fees of bankruptcy counsel "to a level that fails to provide full compensation for their services." (*Ibid.*)

Attorney fees in bankruptcy matters provide a close analogy to attorney fees for probate services as in both cases the fee is set by the court pursuant to statutory authorization and paid out of an estate. ■ We agree with the *Nucorp* court that the most compelling argument for permitting recovery of fee-related fees is that a contrary rule would effectively deny full and fair compensation to attorneys and thereby discourage qualified and competent counsel from undertaking to perform extraordinary services for bankruptcy or decedents' estates. As we explained in *Serrano* v. *Unruh, supra,* 32 Cal.3d 621, if counsel is not compensated for expenses reasonably incurred in fee litigation, the compensation awarded for the underlying services may be effectively diluted or dissipated, and the fee will vary with the nature of the opposition. While fee litigation confers no immediate or direct benefit on the estate, it becomes a necessary incident to the attorney's work for the estate, and so compensable, when unjustified challenges are raised to a fee claim. Probate attorneys can hardly be expected to work for nothing and, if they have no reasonable assurance of full and fair compensation, they will be reluctant to undertake extraordinary services on behalf of decedents' estates.

One final point deserves mention. It has sometimes been argued, as a reason for denying fees for fee-related services, that permitting such awards will result in the "Kafkaesque judicial nightmare" of an "infinite regression of [fees] litigation" in which each request for fee-related fees is contested and results in yet another request for fee-related fees. (*Cinciarelli* v. *Reagan* (D.C. Cir. 1984) 729 F.2d 801, 810 [234 App.D.C. 315].) Experience in statutory fee-shifting contexts suggests that this perceived problem is largely theoretical and seldom arises in practice. In any event, we are confident that trial courts, in the exercise of the broad discretion granted them in ruling on fee applications, have the means to resolve this problem should it arise.

## III

We conclude, accordingly, that extraordinary services compensable under section 910 include work reasonably performed by the attorney to establish and defend the fee claim. This does not mean, however, that an additional award of fees for fee-related services is invariably required. Where the trial court reasonably concludes that the amounts previously awarded the attorney for both ordinary and extraordinary services are adequate, given the value of the estate and the nature of its assets, to fully compensate the attorney for all services, including fee-related services, denial of a request for fee-related fees would not be an abuse of discretion. (Cf. *Estate of Walker, supra,* 221 Cal.App.2d 792, 795.)

In the present case, the trial court declined to receive or consider any evidence in support of the petitions, concluding that it had no authority to allow compensation for fee litigation. As we have seen, this conclusion is in error. Because the trial court did not hold a hearing on the petitions, we are not in a position to assess the merits of the parties' various claims and make no attempt to do so. We conclude only that the allegations of the petitions, if true, are sufficient to permit the trial court, in the exercise of sound discretion and after consideration of the various factors relevant to the fee determination (see *Estate of Walker, supra,* 221 Cal.App.2d 792, 795), to make an additional award of fees in some amount.

The judgment of the Court of Appeal is reversed and the Court of Appeal is directed to reverse the order of the trial court with directions to conduct a hearing on appellants' fee petitions in accordance with the views expressed in this opinion.

Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Eagleson, J., and Kennard, J., concurred.