Henry Clay Greenberg, J.
Plaintiff, a well-known motion picture star, has brought this action to enjoin the company-distributing her latest picture, from continuing to use certain artist’s sketches in connection with its publicity and advertising as well as to recover damages therefor, alleging libel and violation of her right of privacy under sections 50 and 51 of the Civil Rights Law. She has also complained of an alleged breach of agreement resulting from a change in title without her consent, in disregard of the provision in her agreement that no substantial changes or deviations “ from the original script ” were to be made without her approval.
During the course of the trial the theory of plaintiff’s libel cause of action shifted from an emphasis upon the alleged indecent exposure of her likeness in these sketches to the claim that they were obscene and suggestive in their surroundings and not fair representations of the character she portrayed in the motion picture. The original complaint included both claims, but the ‘ ‘ indecent exposure ’ ’ count was dropped when it developed that in several of plaintiff’s former pictures as well as in a poster photograph taken at the conclusion of this picture for the express purpose of advertising it she had exposed her chest in equal or greater degree.
It is common practice in the motion picture industry to advertise a picture by means of drawings depicting the advertiser’s conception of its dramatic or emotional highlights and quite often, in composite form, by the superimposition of some otner scene or something added from the fertile imagination of the artist. Presumably this practice is resorted to when the stills from the picture are not deemed sufficiently exciting to draw the patrons to the box office. Generally these sketches stress love themes and more often than not, are suggestive, being accompanied by descriptive material cut from the same pattern.
Plaintiff was well aware of this practice and indeed, the “ press books ” of several of her former pictures, which were distributed to exhibitors as suggested advertising material, contain similar drawings of her likeness emphasizing love scenes as well as exposure of the female form.
Her contract expressly provided for such use in connection with this picture. It is granted “ the perpetual right to use and *576 license others to use Artist’s name, photograph, likeness and/or voice in connection with * * * the advertising, exploitation and publicity relating to the Photoplay ” (emphasis supplied). The import of this provision is that the advertising will not necessarily be confined to literal representations of scenes from the picture but that her “ likeness ” may be portrayed in drawings about the picture or illustrating its theme for publicity purposes.
It should be observed that these advertising sketches were, in accordance with defendant’s usual practice, submitted to and approved by the Motion Picture Association.
The gist of plaintiff’s charge of libel is that the added features introduced into the sketches were intended to, and do give the impression that Kathy, the girl in the motion picture, is wild and sexually promiscuous; whereas the picture merely shows her to be a scheming and calculating woman who, because of an unfortunate experience in her youth, ruthlessly used her beauty and feminine wiles to get what she wanted from men, advancing her wordly position each time she left one admirer for another, but without any lewd or lascivious associations or acts. Plaintiff concedes that Kathy was a scheming and heartless character, but not a lascivious wanton as portrayed in the advertisement. She claims that these sketches libel her because they falsely proclaim to the public that she has had the ‘ ‘ bad taste ’ ’ or “poor judgment” to permit herself to be photographed performing in the motion picture acts suggestive of immorality, lust and sexual promiscuity.
Having viewed the motion picture as part of the evidence in the case, the court observes that the plaintiff’s hypersensitive reaction to the advertisement exaggerates the lewd intimations of the sketches and minimizes the wickedness of Kathy in the picture. Kathy used her beauty to charm several men, gaining her ends in each case, tricked her employer into believing he had seduced her, became his mistress and later left him to marry an aged millionaire. She may not have indulged in wild parties but there can be no doubt as to her being an immoral person.
The question of law still remains as to whether, even assuming the validity of plaintiff’s interpretation, the sketches constitute a libel upon her. An article or picture tending to expose a person to public contempt, scorn, ridicule, shame or disgrace^ or “ to induce an evil opinion of him in the minds of right thinking persons ” or to injure him in his profession, occupation or trade, is libelous and actionable (Dall v. Time, Inc., 252 App. Div. 636, 639, affd. 278 N. Y. 635, reargument denied 278 N. Y. 718).
*577 If these sketches falsely hold anyone up to public shame or disgrace, it is Kathy, not plaintiff herself. Only the most naive person would identify the true character of an actress with the particular role she may be then enacting, and only an ignorant or bigoted person would impute to her personally the evil qualities of the fictitious character she is playing. The acceptance of such a role does not reflect upon her character, judgment or taste. These sketches cannot possibly tend to induce an evil opinion of plaintiff in the minds of right-thinking persons.
But even on plaintiff’s assumption that an actress has had the “ bad taste ” or “ poor judgment ” to accept a role portraying a lewd woman, should not induce an ‘ ‘ evil opinion ’ ’ of her and thus cannot, even if falsely imputed to her, be the basis for a claim of libel, and certainly not in the absence of any showing of special damages proximately caused thereby.
Of course it is conceivable that a certain type of actress might have a cause of action in libel where she is falsely represented as having accepted a lewd or immoral role. That may be where she has been known to have sedulously avoided any roles of that nature and has established a reputation for portraying only women of high moral principles.
But no such exceptional circumstances exist here. Plaintiff cannot be considered as having been militantly moral in her choice of roles. Nor are the sketches so patently false a representation of the pictures claimed. They are based on actual scenes and do bring out the main theme, even though in exaggerated style. They would appear to be within the permissible limits of present-day motion picture advertising standards.
This disposition applies also to plaintiff’s cause of action under the Civil Bights Law. She consented to the use of her name, photograph, and likeness in connection with the advertising of the motion picture. That consent is to be construed in accordance with the advertising standards then prevailing in the industry and known to her. So long as the advertising is in keeping with the theme of the picture or has some relation to actual scenes depicted and is acceptable when judged by these standards, it falls within the terms of plaintiff’s consent and leaves her with no basis for complaint.
Before we leave the subject of motion picture advertising, something should be said about the public’s interest in fair advertising. Continued blatant emphasis upon sex is so obvious a box-office appeal that almost everyone discounts such advertisements. However it is somewhat degrading as well as an affront to the public’s intelligence. No reason exists why motion picture advertisements should not be judged by the association by the *578 same standard of decency as are applied to the pictures themselves— perhaps, that is the intention, hut the results do not bear that out. Moreover, since drawings and composites are permitted by custom and usage, these should also be judged on the basis of their being fair and reasonably accurate illustrations of the theme or of actual scenes from the picture to prevent any deception upon the public.
The remaining cause of action concerns the change of title. Even if one should concede that, as a general proposition, the title is a part of the script of a play, that has no application where, as here, plaintiff’s contract explicitly referred in its opening paragraph to the photoplay being * ‘ tentatively entitled ‘ Pillars of Smoke ’ ”. Plaintiff was undoubtedly aware of the practice in the industry by which titles of photoplays were frequently changed by the time the motion picture was ready for distribution. Here, also, she was directly put on notice of an option reserved for a change of title. While she made provision in the amendment to her contract for her approval with regard to substantial changes or deviations “ from the original script ”, her failure to include therein an express reference to the title must be construed under these circumstances as limiting her contractual right of approval to the script proper.
Moreover, there has been no showing of damage. As a matter of fact, the title finally adopted, “ Wicked as They Come ”, would appear to be more appropriate to the subject and superior as a movie title to the tentative title of the photoplay. The fact that plaintiff now in effect regrets the role she played in the picture and finds herself plagued by virtue of what she describes as her sensitive and cultured feelings cannot enlarge her rights or structure a cause of action recognizable in law. She is without remedy because she has not been injured except perhaps in her own eyes.
Accordingly the complaint must be dismissed in its entirety. This constitutes the decision of the court.
Settle judgment on notice.