Bettie PAGE, Plaintiff,

v.

SOMETHING WEIRD VIDEO, et al., Defendants.

No. CV 94–2327 RAP (BQRx).

United States District Court, C.D. California.

Aug. 14, 1995.

Martin D. Singer, John G. Burgee, Max J. Sprecher, Lavely & Singer, Professional Corporation, Los Angeles, California, for Plaintiff, Bettie Page.

Stanley Fleishman, Robert C. Moest and David Grosz, Fleishman, Fisher & Moest, Los Angeles, California, and James Bouras, New York City, for Defendants.

ORDER RE CHOICE OF LAW

PAEZ, District Judge.

**INTRODUCTION**

This action arises out of the alleged misappropriation of the "likeness"[1] of plaintiff Bettie Page ("Page") in the recent advertising of home video cassettes for two films in which she starred in the 1950's.[2] Page alleges that

---

1. Page asserts that her likeness has become "recognized throughout the United States as the quintessential "pin-up" model, and is now, akin to the likeness of James Dean and Marilyn Monroe, a nostalgic icon." Complaint at ¶ 11.

2. Her "likeness" is in the form of art work. Page does not challenge defendants' use of her

her unauthorized "likeness" and art work was commissioned by defendants for the first time in connection with the release of her films on video. The complaint contains causes of action for violations of the common law right to publicity and Cal.Civil Code § 3344. Page seeks to, among other things, enjoin defendants from using her "likeness."

On October 31, 1994, the court heard the parties' motions seeking to determine the choice of law. Page argues that California law applies because she is domiciled in this state. Defendants, however, claim that New York law applies because Page lived and worked in New York when the films were made.

At the hearing, the court ordered the parties to submit supplemental briefs on the effect of the films entering the public domain to the choice of law determination. Upon the filing of the parties' briefs, the matter was taken under submission. After full consideration of the moving, opposition, and reply papers, the supplemental briefs, and all other matters presented to the court, the court hereby concludes that this action is governed by California law.

## PROCEDURAL BACKGROUND

On March 11, 1994, Page filed this action in Los Angeles County Superior Court. Defendants removed the action to this court on April 11, 1994, based on diversity of citizenship pursuant to 28 U.S.C. § 1441. Page is a citizen of the State of California; defendant Something Weird Video, Inc., ("SWV") is incorporated and has its principal place of business in the State of Washington, defendant Michael R. Vraney is a citizen of the State of Washington, and defendant David F. Friedman ("Friedman") is a citizen of the State of Alabama (collectively "defendants"); and the amount in controversy is alleged to exceed $50,000. Thus, the Court has subject matter jurisdiction based on 28 U.S.C. § 1332.

## UNDISPUTED FACTS

For purposes of the choice of law determination, the following facts are not in dispute:

Page currently resides in the County of Los Angeles and she has been a resident of the state of California at all times that defendants have used Page's "likeness" and art work to advertise the videos. The films starring Page were made in New York by Irving Klaw ("Klaw") in the 1950's. At the time, Page was a resident of New York and employed by Klaw.

The rights to these films were sold and/or assigned to defendants.[3] In 1963, Klaw assigned his interest in the films to Sonney Amusement Enterprises, Inc. ("Sonney") through an agreement subject to California law. It appears that, at that time, Klaw was a resident of New York and Sonney was a resident of California.

Until recently, the films were thought to be lost. In the 1980's, with the revival of Page's films and popularity, defendants entered into various agreements to recut the two films which are the subject of this action. In March 1993, Sonney sold to defendant Friedman access to the original negatives, which were used to create a derivative work. Friedman subsequently licensed defendant SWV to produce home video cassettes of the derivative work. Defendants have advertised the films in California as well as other states and countries.

The original films were copyrighted in or around 1954. Because the copyrights were never renewed, the films became part of the United States public domain in or around 1982. The defendants have been issued a copyright for the new versions of the films.

## ANALYSIS

■ The Ninth Circuit in *Motschenbacher v. R.J. Reynolds Tobacco Company*, 498 F.2d 821, 823 (9th Cir.1974), specifically held that tort actions for violations of the right to

original photographs nor the distribution of the videos.

3. For purposes of the choice of law determination, Page does not dispute that defendants have

the right to distribute the video cassettes or to use still images or photographs lifted from the films to advertise the videos.

publicity are governed by "local" law. As the court explained:

> First, it appears that California, the state of plaintiff's residency, has a greater interest in compensating its residents for injuries of the type here alleged than other jurisdictions may have in compensating foreigners so injured within their respective borders. Second, in cases of this type, the state of plaintiff's residency is normally the state of greatest injury. Third, California, as the forum, has an interest in convenience and presumably can most easily ascertain its own law. And fourth, California's Uniform Single Publication Act (Civ.Code 3425.3) effectively advances the universal interest in avoiding a multiplicity of suits and assisting the orderly administration of justice.

*Id.* at 823, fn. 4. *See also Matter of Yagman,* 796 F.2d 1165, 1171 (9th Cir.1986).

Further, it is well-established that, where defendants publish or distribute the materials in various states, the state of plaintiff's domicile usually has the most significant relationship to the action. *See* 5 Witkin, *Summary of California Law* (9th Ed.1988), Torts § 339. *See also* Restatement Second, Conflict of Laws §§ 152, 153. As the Ninth Circuit has explained, "[l]ibel and invasion of privacy are transitory torts to which the law of the forum will normally be applied absent a strong governmental interest of another jurisdiction." *Fleury v. Harper & Row, Publishers, Inc.,* 698 F.2d 1022, 1025 (9th Cir. 1983), *cert. denied,* 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983).

The court must follow this Ninth Circuit authority and apply California law to this dispute. Defendants, however, argue that *Motschenbacher, Yagman,* and *Fleury* can be distinguished from the facts in this case. According to defendants, the "governmental interest" test requires the application of New York law to this dispute.

In federal diversity actions, a federal court must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Arno v. Club Med Inc.,* 22 F.3d 1464, 1467 (9th Cir.1994). California, the forum state here, applies the "governmental interest" approach to determine the choice of law. *McGhee v. Arabian Am. Oil Co.,* 871 F.2d 1412, 1422 (9th Cir.1989). This approach entails a three-step analysis:

> Under this amorphous and somewhat result-oriented approach, we must first consider whether the two states' laws actually differ; if so, we must examine each state's interest in applying its law to determine there is a "true conflict"; and if each state has a legitimate interest we must compare the impairment to each jurisdiction under the other's rule of law.

*Arno, supra,* 22 F.3d at 1467.[4]

In terms of the first prong, there is no question that a conflict exists between right to publicity laws of California and New York. Under New York law, the "right to publicity" is exclusively statutory. The New York statute prohibits, in relevant part, the use of "the name, portrait or picture of any living person ... for advertising purposes, or for purposes of trade, ... without having first obtained the written consent of such person...." N.Y.Civ.Rights Law § 50 (McKinney 1992). The New York statute provides an exception: "[N]othing contained in this act shall be so construed as to prevent any person, firm or corporation ... from using the name, portrait or picture of any author, composer or artist in connection with his literary, musical or artistic productions which he has sold or disposed of with such name, portrait or pic-

---

4. In their supplemental brief, defendants suggest that California Civil Code § 1646—which provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed ..., or if it does not indicate a place of performance, according to the law and usage of the place where it is made"—governs the choice of law determination in this case. As defendants point out, the Ninth Circuit in *Arno* observed that an apparent conflict exists among California courts as to whether the governmental interest test or section 1646 applies in contract actions. Even if section 1646 applies in contract actions, section 1646 does not apply in this case because plaintiff has not sued defendants pursuant to a contract. The court applies the governmental interest test here because plaintiff has sued under a tort theory. The fact that some contracts may be involved in the dispute does not mean that section 1646 should be applied.

ture used in connection therewith." N.Y.Civ. Rights Law § 51 (McKinney 1992). This exception, however, has not been recognized by California courts.

Page suggests that this conflict between California and New York is not real because New York's interest was extinguished in this case when the films entered the public domain.[5] Page contends that she regained her "right to publicity" when the films entered the public domain. In response, defendants argue that the fact that the original films have entered the public domain has no bearing on whether New York has a legitimate interest in applying its right to publicity laws to this dispute.

■ Defendants are correct. The fact that the original versions of the films can be freely exploited by "any person" does not vitiate the "right of publicity" rights which Klaw obtained from Page under New York law when the films were first made. Further, Page cited no case which holds that the "right to publicity" exception under New York law depends on the existence of a valid copyright. Therefore, because the legal chain of ownership from Klaw to defendants is undisputed, it is clear that New York has a legitimate interest in applying its own law to this dispute.

As to the final prong of the "governmental interest" test, the court finds that California law will be greatly impaired if New York law is applied to this dispute. Despite the fact that this dispute can be traced to the employment relationship between Page and Klaw in New York some 40 years ago, the court must still focus on the time period when the alleged injury took place. As the Ninth Circuit has explained in the context of a defamation case:

> Each [state] has an interest in having its laws applied, due primarily to the fact that residents of each are parties to this action.... Without question, the district

court was correct in concluding that in this case California's interest would be more impaired if its laws were not applied. New York is indeed the state in which the defendants both reside and in which the allegedly defamatory remarks were uttered. However, because California is the state in which both plaintiffs lived and worked throughout the transactions involved, it is the state where the damage to plaintiffs' reputations, if any, would have occurred. As the district court noted, New York has "absolutely no interest in the reputation of a California citizen." The fact that California is the forum state further strengthens our conclusion, for we have said that in cases of this nature application of the laws of the forum state is preferred.

*Yagman,* 796 F.2d at 1170–1171.

Here, it is undisputed that Page has been a California resident since the time that the derivative works were copyrighted and the "new" art work was created. Further, it appears that in 1993, when the defendants created the "new" art work which was used to advertise the videos, none of the parties to this dispute had any connections to New York. Under these circumstances, the "governmental interest" test requires that California law be applied to this dispute. *See Gifford v. National Enquirer, Inc.,* 1993 WL 767192, \*\*1–2 (C.D.Cal. December 7, 1993).

## CONCLUSION

As set forth above, the court concludes that California law governs this dispute. Plaintiffs shall have 30 days from service of this order to file their motions for summary judgment.

IT IS SO ORDERED.

---

**5.** When the original films were released, the copyrights were governed by the Copyright Act of 1909, which provided for an initial copyright term of 28 years from the first "publication." *See Rohauer v. Friedman,* 306 F.2d 933 (9th Cir.1962). In order to preserve the copyrights, defendants were required to renew the copyrights with the U.S. Copyright Office in the 28th

year after the first publication. *Id.* The 1909 Act was replaced in its entirety by the Copyright Act of 1976. The 1976 Act continued the renewal requirement for works in their initial 28–year copyright terms as of January 1, 1978. 17 U.S.C.A. § 304(a) (West 1977). When the 1976 Act was enacted, the 28–year copyright term for the films had not yet expired.